### CENTRAL TRUST CO. OF NEW YORK *v.* MARIETTA & N. G. Ry. Co., (HIAWASSA Co., Intervener.)[1]

*(Circuit Court, N. D. Georgia. July 6, 1891.)*

RECEIVER OF RAILROAD COMPANY—PURCHASE OF ROLLING STOCK.

Where the property of a railroad company is placed in the hands of a receiver, and rolling stock is found on the railroad, placed there by another corporation, the principal stockholders in which are also controlling stockholders in the railroad company, and the rolling stock is claimed by the corporation placing the same on the road, and no contract of sale is shown, *held*, that the receiver should be authorized to purchase the same and pay the value of the rolling stock when the property went into the receiver's hands.

In Equity. Bill to foreclose a railroad mortgage.
*Butler, Stillman & Hubbard* and *H. B. Tompkins,* for complainants.
*Hoke & Burton Smith,* for intervener.

NEWMAN, J. When the Marietta & North Georgia Railway was placed in the hands of a receiver by order of this court there was on the

[1] Reversed in circuit court of appeals, 48 Fed. Rep. 850.

road a considerable amount of rolling stock, and as to certain engines and cars the Hiawassa Company, by intervention, brought a claim of ownership. The evidence shows that the manufacturers of the engines and cars sold the same to the Northeastern Improvement Company. The contract between the manufacturers and the Northeastern Improvement Company was a conditional sale, the manufacturers reserving title. There was some question as to execution of papers and record, but that is immaterial here. There appears to be a balance of purchase money on two engines due the makers of the same, which will be controlled and protected in the decree. The rolling stock in question was found, as stated, on the Marietta & North Georgia Railway when the receiver of the court went into possession of the same. It was placed on the road by the Northeastern Improvement Company. No contract of purchase by the railway company was ever made. It was simply placed on the road by the improvement company, without contract whatever with reference thereto. George R. Eager was the contractor to build the Marietta & North Georgia Railway. He was the president and largely interested in the Northeastern Improvement Company. While not himself an officer of the railway company, he and his friends, he states, controlled a majority of its stock. It appears further that the Hiawassa Company was in some way an offshoot of the Northeastern Improvement Company. When the special master, in a former report made to the court, reported in favor of the Hiawassa Company as to its ownership of this property, and recommended, as the property was indispensable to the operation of the road, the purchase of the same by the receiver, the court, in view of the above-stated facts as to Eager's relationship to the corporation in interest, and his further relation to the matter as contractor to build the road, referred the question back to the special master for a thorough investigation and report as to the relation of these corporations to each other, and Eager to them all. The second report made by the special master, now under consideration, finds nothing in the matters alluded to and the relations of the parties to affect the honesty and fairness of the transaction. He finds them to be distinct persons in law, and the evidence taken by him sustains this view, and shows that, while Eager occupied the relation stated to all the corporations, careful accounts were kept between them as to all their dealings; and, so far as can be ascertained, shows that the legal principles applicable to different individuals under the same circumstances should be applied to parties in interest here. The question is, when rolling stock is placed upon a railroad without any contract whatever in reference thereto, and the railroad allowed to use the same in its ordinary operations, is it a sale? If, from the facts stated, the delivery of this property amounted to a sale, it is conceded that the act of the legislature of Georgia of 1889, in reference to conditional sales of property to railroads, and requiring record of the contract within six months in order to make it a valid contract as to third parties, has not been complied with, and the intervener here would have no other rights than that of a general creditor for the value of the property.

v.48f.no.1—3

The contention for the Central Trust Company, which opposes the claim of the intervener, is that where rolling stock is placed on a railroad, and the railroad proceeds to use the same as its own in its daily business, sending it from one railroad to another, it implies necessarily an intent to sell; that, the rolling stock becoming a part of the railroad itself, and absolutely essential to its operation, no mere contract of bailment will be implied, but a contract of sale. The superintendent of the railroad at the time the rolling stock in question was placed on the same, who is now receiver of the court, testified before the special master that none of this property belonged to the railroad, and Eager testified that it belonged to the Northeastern Improvement Company until it was sold by it to the Hiawassa Company. To hold that this property is the property of the railway company it is necessary to do it upon the presumption arising from delivery and possession, as stated above. No price was ever agreed upon between the railway company and any one else as the sellers of the same. No agreement was ever made on the part of any of its officers to buy the same. The transaction lacks those essential elements of a sale, and such evidence as there is to throw light on the subject I think negatives the idea of any intent to sell or to purchase. The Central Trust Company, the trustee for the bondholders under the mortgage executed in 1887, contends that its mortgage, which embraces not only the property of the railroad in existence at the time, but after-acquired property as well, has attached to the rolling stock in question, and by its counsel the foregoing objections were presented. The lien of the mortgage could only attach to property "acquired" by the railroad, and some title must vest in the railway company of course, in order that the mortgage should cover it. I am unable to find any such title vested in the railroad company under the facts, and presumptions that arise from facts, as would authorize me to hold that any title has been acquired by the railroad company to this property.

The special master has, in his second report, found the value of the property at the time the railway went into the hands of a receiver, and reports that as a proper amount to be paid by the receiver for the same. This report is in conformity with the views of the court as to the time and manner of finding the amount to be paid for this property by the receiver on the purchase of the same, which it is conceded is necessary in order to carry on the operations of the railroad. All the exceptions must be overruled, and the report confirmed.